Okay, the first case, the first argued case this morning of Chan against Yang is counsel present. Please come forward. Okay, this is case number 16 1214. Mr. Bauer when you're ready. Your honors, may it please the court. Mr. Bauer, appellees asked us to affirm this case based on interference of Stoffel. I don't see one mention of that in your blue brief. Why shouldn't we affirm just based on that? I'm sorry, your honor. Pages 1 to 9 of the While we think that the application of interference of Stoffel in this case is not correct, the more important features and characteristics of this case is that it's undisputed that the claims to the party Yang are directed towards subject matter that is not patentable under section 101. That is not merely Chan's contention, but it was in fact the case that the examiner in the patent office rejected those claims as being unpatentable under section 101 and the interference was declared nonetheless. So we have continued to raise our objection that the claims are not directed to patentable subject matter in our brief. That's not disputed by the appellee Yang. And also importantly, the panel at the PTAB also did not address the patentability of the claims. They regarded the patentability of the claims as being irrelevant to the order to show cause. It may be irrelevant to the order to show cause which was based on interference of Stoffel, but it's not irrelevant to the fact that there is an interference proceeding which has been declared. And when we raise these points, the decision and the opinion of the board was that it was irrelevant. We cited in our brief... I'm still confused here. Where's the word of Stoffel in here? I'm sorry. You're directing me to pages one through nine. Give me a specific page that will help me. Okay. Your Honor, I'm not saying that specific term either. In the pages as I say it. I would refer you then to our response to the order to show cause in which we did address the interference of Stoffel. Continue with your argument. If we need supplemental briefing, we will proceed with it. Thank you, Your Honor. We believe that the patentability of the claims is a crucial element in an interference proceeding. And specifically, the rule before the board, Rule 102, says, and I quote, before a contested case is initiated for each applicant and patent, A, examination or re-examination must be completed, and B1, there must be at least one claim that is patentable but for a judgment in the contested case. So we have here an instance in which it is undisputed that the claims are not patentable, and yet the interference proceeding has gone forward. There is also confusion about what is the actual language of the claims. When the examiner rejected the claims under 101, it was suggested that the 101 rejection could be overcome by adding a white-wrap height limitation. Now evidently, that suggested amendment was never carried out. So we have some confusion about what is the actual claims. That wasn't carried out? That wasn't part of the interference? No, your honor. In Yang's submission of their claims, in appendix pages 226 to 230, they included a footnote, appendix page 228, in which they noted that the white-wrap height limitation was not included in the claims because although it had been mentioned as necessary to make the claims patentable subject matter under 101, it had not been entered prior to the declaration of the interference. So it wasn't, your reading is that it was not a condition accepted by the office for proceeding with the interference? Well, we've had to proceed under both alternatives just to be safe. We've argued both. Your argument on noninterference is based solely on an analysis of the Yang application, including the white-wrap height amended claim language. So you're arguing both that the interference proceeding must take account of amendment 12 and at the same time it can't. Well, we've responded to those arguments as to both. If the wrap height limitation is included, we think there is patentable distinctness. If it's not included, we believe that the claims then remain unpatentable under section 101 as being primarily directed towards a natural compound and therefore the interference should not have been declared. Did you make that argument below that the unamended claims were unpatentable under 101? Because I didn't see that argument ever made below in any form. Yes, the argument was made in the response to the order to show cause. In the response to the order to show cause, you said the amended claims were unpatentable. What I don't see is any argument that the unamended claims are unpatentable. Yes, that's correct. And we've had to because the claims that Yang has submitted as before was at issue in the interference proceeding is without the wrap height limitation. I've had to address that representation by the appellee. And if the white wrap height limitation is included, then we think there's patentable distinctness between the claims. If it's not included, we're not relying upon patentable distinctness, but on the fact that the claims would remain unpatentable subject matter. Let me ask you a housekeeping question. Looking at page one, I wrote this note. You highlighted in yellow the word interference. Why? I'm sorry, Your Honor, I can't answer the question. I did not submit the brief and my copy of the brief does not include the yellow highlighting. Maybe somebody snuck in and did my briefs. Because there are various places where there's just random yellow highlighting. I don't know. Okay. But looking at the posture of the case, I think it's important to understand that we are engaging in a proceeding where the claim subject matter arguably is not patentable at all. Of course, we're dealing with one-on-one issues in many recent years. And when these issues are raised, they represent a full stop to the proceeding. If you have a one-on-one issue and the claims at issue turn out to be unpatentable subject matter, you don't continue on to a 102 analysis or a 103 analysis and a court action. So the distinction that you're drawing is the distinction between the natural product and the oxalate salt, which may or may not have been included in some sort of understanding that that's what was being dealt with? Yes, we are following that distinction, which the examiner made during the examination of the application of Yang's application. Okay. So we're following on that. Now, the rule that I quoted says that examination must be completed. I mean, this is very odd. I can't recall any case that's come to the federal circuit from an interference proceeding where we're not even sure what the limitations of the claims are. So we've had to try to address both alternatives. Well, let's assume that the examiner thought that that limitation to the oxalate had been added and so that the white graffiti was included. Yes. And then that's what we assumed when, in the response to the order to show cause, we argued why that white rapide limitation served to distinguish those claims from our claims. Did I answer your question, Your Honor? Well, so far. Okay. And so examination, it seems that the examination was not complete in this case. For some reason, the interference was declared before the examination was completed. And also, it's undisputed that the claims are not directed towards patentable subject matter. Board Rule 103 says, and I quote, You're saying it's undisputed? If it's undisputed, why are we here? That's exactly our contention, Your Honor. If it's undisputed that the claims... Because of the estoppel? I didn't say that it was undisputed. Well, certainly in Abilene's brief, they did not dispute the patentability of the claims under 101. They said, irregardless, as the board panel did, irregardless of whether they're patentable subject matter, because of interference estoppel, we must still find judgment against Chan. And we think that's an error because patentability of the claims is a fundamental jurisdictional issue. Board Rule 103 says, the board acquires jurisdiction over any involved file in an interference when the board initiates a contested case. So, and Rule 102 says, in order to initiate a case, you have to have completed examination and the claims have to be allowable but for the other party. And the claims must be patentable. And so that's not the case here. So we should, our contention is that there should not have been interference proceeding declared. And the panel at the board simply said it was irrelevant. And that's particularly troubling because we don't have anything more to respond to as to why that is believed to be irrelevant. We think it is relevant. In fact, we think it is a necessary prerequisite. Appellees and the board panel didn't point to any decision in which an interference proceeding has allowed to be gone to a conclusion where the claims were admittedly unpatentable as to that party. On the interference estoppel issue, I think the analysis confuses that. Here, we think that there's a separate analysis regarding the interference proceeding and whether it should be declared. You do not declare an interference proceeding and you do not initiate a court action so that you can then later at the end of it apply the estoppel. There has to be proper basis for having the proceeding in the first place. Is there any dispute, assuming that these, I was going to say technical objections, but whatever they are, don't apply, is there any dispute as to priority? I believe as to priority, we are bound by interference estoppel. Because in the first interference, when it came to the priority phase, we defaulted as to the two patents in that case, and they were lost. And I think estoppel does bar us from arguing priority. I don't think it bars us from arguing lack of patentable subject matter. Okay, let's hear from the other side, and we'll save you a rebuttal time. Thank you, Your Honor. Ms. Spriggs. Good morning, Your Honors. Thank you for your time this morning. The first issue of whether the board correctly declared interference between the re-declared count claims of the 197 patent and the claims of the 637 patent application, there seems to be a main question to ask and answer. Is there substantial evidence to support the board's finding that there was insufficient evidence submitted by Chan that the claims of the 637 application are not anticipated or rendered obvious over the re-declared count claims? And the answer to this question is yes, there was substantial evidence to support the board's conclusion. The declaration of the 025 interference in itself created a rebuttable presumption that the 637 application claims were anticipated or obvious over the 197 patent claims or vice versa, and the board correctly found that there was insufficient evidence submitted by Chan to rebut that presumption. And the record on appeal actually reflects the lack of any evidence whatsoever submitted by Chan in this regard. Chan's brief and argument here makes this question appear slightly more complicated with regard to the unamended claims versus the amended claims, but we'll submit that the board correctly looked at the amended claims because those were the claims that the examiner indicated were in condition for allowance. Those were the claims that the examiner indicated included the white RAFID limitation, and in the interview summary that was available to the board prior to the declaration of interference, that limitation was referred to as critical to the condition of allowance. So it's clear from the record that the board used the amended claims and not the unamended claims. In any event, even if we are considering the unamended claims of the 637 patent application, Chan failed to submit any evidence whatsoever and also didn't submit any argument regarding as to why those claims, the 637 patent application unamended claims, were not or were anticipated or obvious over the 197 patent claims. And there was argument in the response to order to show cause submitted by Chan to rebut the presumption that the declaration of interference created with regard to the amended claims, but there was no evidence whatsoever to support that argument. The board had no testimony from a person of ordinary skill in the art to show that the claims of the 197 patent were different from the claims of the 637 patent application. So when the board issued its order in July of 2015, the board appropriately noted that there was no evidence to support attorney argument on obviousness. And without evidence, it had no choice but to find that there was insufficient evidence to rebut the presumption created by the declaration of interference. So is your understanding that the prosecution is complete even if the decision on priority is sustained? Yes, Your Honor. In terms of completeness with regard to having allowable subject matter, the examiner indicated that there was allowable subject matter in the interview summary. And then once the interference was declared, the next step is to basically allow the claims or it goes back to the examiner at some point after the 025 interference is complete. And then at that time, the examiner could consider Chan's arguments on 101 again and reopen prosecution. That's really what I was thinking about, whether the 101 issue, which perhaps has been developed more thoroughly than when it was initially before the examiner, particularly because of the white graffiti. Well, Your Honor, the record of this declaration and the previous declaration is available to the examiner. And so once the 025 interference is complete, that whole record goes back to the examiner and the examiner can go back through Chan's arguments and reconsider 101, even after it already considered 101 and suggested the limitation that is now in claim 12 of the 637 application. Okay. It's telling in Chan's appeal brief that there's only citation to the 197 patent claims to support the argument that the crystallized version of the compound, as in the amended claims of the 637 patent application, are not anticipated by the non-crystallized version of the compound, as in the 197 patent claims. But the patent claims in themselves are not substantial evidence that the 637 application claims are not anticipated by the claims of the 197 patent. And there's no citation at all in the record in Chan's brief to support its argument on appeal that the crystallized version, the amended claims of the 637 application, is not obvious over the non-crystallized version of the compound, as in the 197 patent. Is the chemical composition identical, or are you now talking about the salt for the crystallized version? Your Honor, I'm talking about the addition of the white-raphid limitation into the claims as the crystallized version of it versus the non-crystallized version. So it's really a different compound. It's the oxalate, right? In terms of a different compound, I think the board concluded that there was not necessarily a non-obvious difference between those two compounds. Which would be true of any sort of a complex organic molecule, I suppose, but perhaps of significance as far as 101 is concerned. Your Honor, I think that the examiner has a chance to re-explore the patentability of the claims once it's passed back to the examining court after the 025 interference, but at the time the examiner indicated the allowable subject matter, the examiner decided that this was sufficient to get over any potential rejection under 101. Does the crystallized version occur naturally? Your Honor, I'm not sure if these issues are fully developed at this point in the issues that we're arguing on appeal. Yes, well, I'm not asking you to go outside the record. It wasn't clear to me. I'm sorry, it wasn't clear in the record? It wasn't clear to me whether the crystallized version, the oxalate, occurred naturally in the plant, which would have solved the 101 problem, I suppose. Your Honor, I'm not prepared to take a position. No, I didn't want to move outside of the record. If that wasn't part of the debate, we'll leave it unresolved. Thank you, Your Honor. So on the first issue as to whether the board correctly declared interference, there was no error in the board's conclusion. The chance submitted no evidence to rebut the presumption created by the declaration of interference, and as such, the court should not disturb the board's re-declaration of interference in the 025 interference. And then on the second issue, whether the board correctly issued judgment against the re-declared count claims and then canceled the re-declared count claims without considering the patentability of the claims of the 637 application, the board did not err by not considering Chan's patentability arguments. It is conspicuously absent from Chan's appeal brief that there's no discussion whatsoever of the preclusive effects of the doctrine of interference estoppel, but the application of this doctrine is central to this issue. When correctly applied, interference estoppel removes the motions and the other issues that can be raised during the priority phase of an interference. Whereas here, if a party did not timely raise an issue such as patentability under 101 that it could have raised during the previous interference, it may not later raise that issue in a later proceeding before the office. And Chan cites in its brief Perkins against Kwan in support of its argument that the board should have resolved the patentability in the 025 interference. However, the facts of this case are distinguishable from Perkins against Kwan for the very reason that... Chan still raises his 101 arguments in the form of a third-party submission. Your Honor, Chan actually has multiple routes. And in fact, a third-party submission once prosecution is reopened is certainly still open. In addition to that, the AIA has proceedings in effect post-grant reviews where Chan or any other third party, so the public interest is still served and the door is not closed on challenging the patentability of these claims. However, based on interference estoppel in this case, the door is closed for Chan because Chan had a chance in the 982 interference but didn't timely raise the issue of patentability in that interference. And the board did not issue the order to show cause erroneously and Chan doesn't argue otherwise in its brief. This second... Post-AIA, we don't see many interference cases anymore. Is it your view that this is sort of one of the last or among a group of the last of such cases out there? Your Honor, we were just reviewing what cases were before the board at this point. And I understand that there are some larger interferences still percolating. But yes, it is clear that this is not a practice that's going to continue for much longer. And then it obviously goes into the derivation proceedings, which is somewhat different than an interference proceeding. So the second interference that was declared by the board, for lack of a better term, was really to clean up what the Patent Office probably should have handled in the 982 interference since the same subject matter and the same parties were involved. So priority was never an issue. And with that priority never being an issue, along with that, neither were the motions or the issues that should have been raised in the 982 interference because those claims and those issues were litigated or could have been litigated in the 982 interference. Chan also makes the argument in its brief that the patentability question had been fully raised and is capable of being fully presented. Chan is partially correct on one of these points. The issue of patentability was raised, but it was raised in the 982 interference and not in a timely fashion. The board denied Chan the ability to file its motion under 101 because it waited almost a year and a half after the relevant decision issued to request authorization to file that motion. The board did not abuse its discretion by denying Chan the ability to file that motion. Chan didn't file it with its proposed motion list in January of 2014. In fact, it waited until there was only a week left in the motions phase to file that request for authorization. And then Chan didn't even challenge the denial of its authorization to file the motion by the board and instead conceded priority and brought an end to the 982 interference. The board did not abuse its discretion in doing what it did. The doctrine of interference estoppel exists to deal with this exact situation. Since Chan, as the losing party in the prior interference, failed to timely raise the patentability issue during the 982 interference, it cannot now raise the issue in the 025 interference. And just to do a little bit of cleanup, the doctrine of interference estoppel was correctly applied by the board. The 025 interference involved the same subject matter and the same parties. When the 025 interference was properly declared, the board considered whether Chan was subject to estoppel. Well, you used the words early on, conspicuously absent. I couldn't find that argument made anywhere, is it? I don't see it as well. When counsel represented that it was in pages one through nine, I quickly glanced through it again thinking that we may have missed something. I do not see the words interference estoppel anywhere in the brief. And so there is no argument either with regard to the order to show cause that the board issued with the application of interference estoppel by the board. In fact, Chan completely ignores that argument, but it was correctly applied by the board. Well, but maybe it really is not before us. Your friend says he's not contesting priority. He's pursuing these other issues, and the estoppel would apply to priority. Your Honor, I would argue that the estoppel applies to the claim of priority and also the other issues that would have been litigated or could have been litigated by Chan in the previous interference. He's arguing the other issues. He's just not arguing priority. Your Honor, with interference estoppel, if correctly applied, those issues that could have been raised and were not raised in a timely fashion by Chan in the previous interference should not be raised now in the second interference. It would give Chan a second bite at the apple to allow Chan now to raise this issue when it's not the time to relitigate this issue in the second interference. You've just echoed the argument Apple made yesterday. It was funnier when they did it. Okay. Your Honor, Chan failed to meet the burden that it had on the order to show cause, and it submitted no argument or evidence on patentable distinction of the re-declared count claims. So there was no error whatsoever in the board's conclusion that Chan didn't submit evidence on patentable distinctness and thus was estopped from continuing with the 025 interference. And in addition to not continuing with the 025 interference and the priority phase, it's also now estopped from relitigating or attempting to relitigate the 101 issue. I don't know if it's that. Maybe after all, in the first interference, you don't want to assert that your own claim is invalid under 101 or anything else, and so you argue priority. Then if you lose on priority, perhaps your only recourse is to challenge the entire subject matter of the interference. So perhaps we have a different circumstance here that would explain and perhaps not negate the emphasis that's now presented. Your Honor, I would argue there's no injustice to Chan here. There are other opportunities, as we discussed this morning, with regard to when Chan can and still can challenge the patentability of the claims. This is not the time and the place. Okay. Thank you. Thank you, Your Honor. Okay. Mr. Ballard. Your Honor made reference to supplemental briefing. Well, I don't know if we—I think that we've pursued the issue adequately. Okay. I was going to suggest that. Counsel referred to cleaning up the record and the inequity as a result of the estoppel. The 197 patent, which is attacked in the second interference, those claims were in fact patented at the time of the first interference. That distinguishes this case from Biogen and Woods v. Tsuchiya. From the point of view of Chan, Chan made a decision that we would abandon those two claims that we thought were suspect because they were directed towards natural compounds, but our 197 patent was not. And the result of the first interference was that those two patents would be invalid and we would keep the 197 patent. So there's no estoppel because there's no issue now that wasn't already available in the first interference. Either Yang, through a motion, or the Board, could have invalidated these claims in the first interference. So if you talk about estoppel, I don't think it applies because certainly in the case of Biogen, the parties filed and obtained a claim after the first interference, which had to be addressed in the second interference. There is no reason why these claims for the 197 patent weren't addressed in the first interference. So that's why estoppel is not appropriate for these claims. Did you make any of these arguments in your brief or cite Biogen at all? Yeah. Excuse me? Did you make any of these arguments in your brief or cite Biogen anywhere in any of your briefing to this court? No, Your Honor. I did not raise this notice of 197 patent. And I am raising that now, but I think it needs to be heard by the court, as does patentability issues. So why would we hear it when you're raising it not only for the very first time in rebuttal argument? The PTO has no opportunity to respond. You didn't raise it in your briefs. They couldn't respond to it in briefing. You're not even raising it in your opening argument. You're raising it in your rebuttal argument. She doesn't even, I'm sorry, not PTO, but opposing counsel doesn't even get to stand up and respond to it. Well, yes, Your Honor. And the issue here is that the decision of the patent board was that patentability was irrelevant. No, the issue is whether you waived the whole thing. That's the issue. Well, I would submit to the court that perhaps the next wave of 101 cases is going to be, for example, licensee estoppel, where someone has taken a license to a patent, which is later found to be invalid under 101. Are they going to be estopped to continue to pay royalties, even though there is no patent under 101? That seems to me to be inequitable. What does that have to do with this case? Well, because I think the estoppel relates, Your Honor, to the priority claims and the other claims. I think patentability under 101 is a full stop. The only connection between the question I asked you about waiver and your answer was you used the word wave, as in there's going to be a wave of cases. That's not enough. Well, I think that the estoppel does not apply so far to go to the jurisdictional prerequisites. Ignore the word estoppel. Start with the word waiver. Haven't you waived this? No, I don't think we have waived the patentability argument, and I don't think we are precluded from arguing that the lack of patentability of the claims means that the proceedings should not continue, whenever that's discovered. Accepting that position, we still have the argument that the position, that what the board decided was, in fact, as a matter of fact, supported by substantial evidence, and that's a heavy hurdle to overcome, is it not? I think the board's decision in that it did not address the patentability, it said it was irrelevant. I think this court should at the least vacate and remand, because they did not explain at all, in view of board rules 102 and 103, why patentability of the claims in an interference proceeding is not relevant. I don't think there's been any other case before this court in which an I think it's a new issue, and how it fits within the estoppel doctrine is difficult. But I think it does not merit being swept up with estoppel of priority and other types of waivers. As I saw it, it was because having decided priority, that as far as the board was concerned, that was what the role of the interference was about. I know they're supposed to review patentability, but here both sides had already been held to have patentable subject matter, and the board decided, in the first case, priority. Yes, yes. Perhaps that's an oversimplification on their part as well, but as far as the issue, the dispute between the parties, doesn't that resolve it? My contention is, as to the 101 issue, it does not, and as to the 197 patent, it was in the first interference. So that was decided in the first interference. Okay, we'll try and figure it out. Any more questions? No, I don't want to. Okay, thank you. Thank you both. The case is taken under submission.